HARNESS et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4989. Decided December 29, 1932. (17 P. [2d] 277.)

*De Vine, Howell & Stine,* of Ogden, for plaintiffs.

*Geo. P. Parker,* Atty. Gen., and *Bagley, Judd & Ray,* of Salt Lake City, for defendants.

ELIAS HANSEN, J.

Elizabeth Harness, Tabitha Harness, and Jane Harness Poe applied to the Industrial Commission of Utah for compensation on account of the death of their brother John G. Harness, who died on October 19, 1928, as the result of an injury which he sustained while in the employ of the Amalgamated Sugar Company, a self-insurer, subject to the Industrial Act of this state (Comp. Laws 1917, § 3061 et seq., as amended). The commission found that the applicants were not dependent upon their brother John for their maintenance and support, and for that reason compensation was denied. The commission ordered that the Amalgamated Sugar Company pay to the treasurer of the state of Utah to the credit of the Employees' Combined Injury Benefit Fund, the sum of $998.40, and pay to E. J. Harness the sum of $150 for the burial of the deceased. The applicants have brought the cause here for review. They complain of the

finding made by the commission that they were not dependents of their brother at the time he was fatally injured, and of the order denying them compensation. No complaint is made of that part of the order directing payment of $150 to E. J. Harness for the burial of the deceased. The evidence shows that he expended considerable in excess of that amount for the burial of John. Thus the sole question presented for review is whether or not the evidence taken before the commission was such as to require a finding that the applicants, or either of them, were or was dependents or a dependent of the deceased within the meaning of the Industrial Act of this state at the time he received the injury which resulted in his death. The applicants offered in evidence two depositions; one being the testimony of Elizabeth Harness, and the other the testimony of Jane Harness Poe. Tabitha Harness and E. J. Harness testified before the commission on behalf of the applicants. No evidence was offered by the defendants, and there is no conflict in the testimony of the witnesses who testified for the applicants. The testimony establishes these facts: The deceased at the time of his death was 28 years of age. He was unmarried and was earning $28.78 a week, working six days a week. E. J. Harness is an uncle of the applicants. Elizabeth was 16 years of age, Tabitha was 18 years of age, and Jane was 23 years of age, at the time of the death of their brother. Elizabeth was residing with a married sister and attending high school at Burlington, W. Va. Tabitha was residing with her uncle E. J. Harness, and attending high school at Ogden, Utah. Jane was in the West Baltimore General Hospital preparing to become a nurse. She received her board and lodging at the hospital and was paid $10 per month. She had been married, but secured a divorce from her husband. She was the mother of one child, who, at the time of the hearing, was six years of age. The child was living with and supported by the uncle, E. J. Harness. In the divorce proceedings Jane did not ask for alimony or for any money to support the child. Her former husband had done nothing for

the support of herself or the child since the divorce, and she did not know where he was. The mother of the applicants died in 1918, and the father died in 1925. John came to Utah in October, 1927. Before coming to Utah he resided in Moorefield, W. Va. There were five children in the family, four of whom were girls. John was the oldest of the children. During the last few years of the father's life he was in poor health and unable to do any work. John operated part of the farm, and a part was leased. For a time he worked for the state road commission of West Virginia. The income from the farm and the wages which he earned were used to support himself and the other children. John continued to operate a part of the farm and to provide for the support of his sisters after the death of the father. The farm consisted of between 500 and 600 acres of land. About one-half of the land is mountainous, about 22 or 23 acres is under cultivation, and the remainder is pasture land. Before John and Tabitha came to Utah the live stock which had theretofore been kept on the farm was sold and the farm was rented for slightly in excess of $500 per year. An arrangement was made by all of the children that the rental derived from the farm, after paying taxes, should be used for the support and maintenance of Elizabeth. That arrangement continued up to the time that John was killed. The evidence is silent as to the net amount that Elizabeth received from rent of the farm, but it does appear that an aunt sent her some money to aid in her support and education. After they arrived in Utah, John and Tabitha resided with their uncle, E. J. Harness. For a few months John was unable to secure employment and he took a short business course. He secured employment with the Amalgamated Sugar Company in March, 1928, and continued in that employment until the time of his death. Tabitha testified that after her brother John secured employment with the defendant sugar company he from time to time gave her money with which to buy clothes and for spending money; that she did not remember the various times that John had given her money;

that he gave her money when she needed it, if he had it to give; that the last time she received any money from him was about a week before he was killed, at which time he gave her $7; that with the exception of such money as was given to her by John, her uncle E. J. Harness paid for her support and education. E. J. Harness testified that his old home was in West Virginia; that he went back there every three or four years; that for a number of years he had corresponded regularly with members of his brother's family; that for a number of years before his death "Jack really was the main maintenance of that family   *   *   *   that for sometime he had helped his brother's children in times of stress and difficulty"; that he did not "do it straight all the time or make it a straight thing. I wanted them to feel their own responsibility, but if they got behind and needed something that was absolutely necessary I helped them.   *   *   *   I figured that Jack would be self-supporting and would help the children,   *   *   *   that was always understood. This is the reason for his coming here. He thought he could do better and could do more for his sisters." Mr. Harness further testified that he had heard his brother's daughters talk about getting money from Jack, but he did not remember the amount. Jane Harness Poe testified that at the time her father died she was living on the farm at Moorefield, W. Va.; that after the family ceased to reside on the farm, Jack, at various times, gave her money for her support, but she could not remember the exact amount; that after Jack came to Utah he usually sent the money by check on an Ogden bank, but she did not remember the name of the bank; that Jack sent her from $10 to $12 every two months; that the last money she received from him was on July 19, 1928; that she began her training to become a nurse in 1925; that it required four years to complete the course; that she secured her divorce in October, 1925; that when she began training she furnished her own uniforms; that thereafter the hospital furnished her with uniforms, but she was compelled to buy her own shoes. The evidence further shows

that the uncle, E. J. Harness, was, at the time of the hearing, well to do financially, but was in poor health.

It is the contention of plaintiffs that the facts thus established by the record are such as to require a finding that the applicants were partly dependent upon their brother John at the time he was fatally injured. Defendants contend to the contrary. After a careful examination of the testimony in this case we are impressed with its apparent frankness and truthfulness. The deposition of Elizabeth was taken at Petersburg, W. Va., and that of Jane at Baltimore, Md. Tabitha and her uncle, E. J. Harness, testified before the commission at Ogden, Utah. The testimony of the witnesses is remarkably free from conflict and has all of the characteristics of being truthful. Counsel for the defendants have not pointed out and are unable to find anything in the testimony offered in behalf of the applicants to justify disbelieving the same. It is the established law in this jurisdiction that under our Industrial Act dependency and its extent are questions of fact for the determination of the Industrial Commission. This court may not disturb the findings of fact made by the commission unless it appears that the commission has applied an illegal standard, or has found a fact without evidence to support it, or has made a finding against uncontradicted credible evidence. On an application to this court the question of whether there is any evidence to support a finding of the commission, or whether there is any justifiable reason for making a finding against uncontradicted credible evidence, is one of law. *Kavalinakis* v. *Industrial Commission,* 67 Utah 174, 246 P. 698.

The duty of this court to examine, in the light of the evidence, the facts found by the Industrial Commission is analogous to its duty in examining a similar question upon an appeal in an action at law. Since the enactment of the Industrial Act this court has frequently had occasion to set aside awards made in favor of injured employees and their dependents because the facts found were not supported by any competent evidence, and also because

the commission has applied an illegal standard in making an award. While this court has not heretofore had occasion to annul an order wherein the commission has denied compensation upon the ground that the applicant has failed to establish dependency, yet this court has recognized that its authority and duty are not confined to setting aside awards made in favor of employees and their dependents. The evidence may be such as to require that findings be made in favor of an injured employee, or in case of his death in favor of his dependents. In the absence of some reasonable basis for disbelieving the uncontradicted evidence offered in support of an application for compensation, the commission may not disregard such evidence. The evidence may, as a matter of law, require an affirmative as well as a negative finding. *Kavalinakis* v. *Industrial Commission,* supra. The Industrial Act, Laws Utah 1919, c. 63, § 3140, subd. 5, provides:

"The following persons shall be presumed to be wholly dependent for support upon a deceased employee:

"(a) A wife upon a husband with whom she lives at the time of his death.

"(b) A female child or female children under the age of eighteen and a male child or male children under the age of sixteen years (or over such ages if physically or mentally incapacitated from earning) upon the parent with whom he is living at the time of the death of such parent.

"In all other cases, the question of dependency, in whole or in part, shall be determined in accordance with the facts in each particular case existing at the time of the injury resulting in the death of such employee, but no person shall be considered as dependent unless a member of the family of the deceased employee, or bears to him the relation of husband or widow, lineal descendant, ancestor, or brother or sister."

It will be observed that under the provisions of the law just quoted the burden is cast upon the applicants to show dependency, and the extent thereof. No presumption of dependency existed in their favor. The evidence shows, without conflict, and there is no reason for disbelieving such

evidence, that when in October, 1927, John and Tabitha left the family farm both Tabitha and Elizabeth were under eighteen years of age. Had they then been living with their parents instead of with their brother John they would, as a matter of law, be presumed to be dependent upon their parents. The parents being dead, John assumed the duties and obligations of the head of the family. Neither Elizabeth nor Tabitha were self-supporting. They were both attending school. It is clear that the income from the family farm was insufficient to support and maintain them. It was John who provided for their support and maintenance from his wages, and from what he was able to raise on the farm. Nor can it be said that the dependency of Elizabeth or Tabitha ceased when John left West Virginia and came to Utah. All of the rents derived from the farm were used for the support of Elizabeth. No claim is made that Elizabeth was entitled to the rental as a family allowance. The evidence shows that she received John's share of the rental because he consented that it be used for her support and maintenance, and not otherwise. The fact that John arranged his affairs so that his share of the rents of the farm was paid directly to Elizabeth instead of coming to him can have no legal effect. If he had been paid his share of the rental and then in turn had paid to her an equivalent amount out of his wages the results would have been the same. Our Industrial Act, unlike some, does not require that dependency to entitle one to compensation must be paid from the earnings of the employee. The fact that an employee chooses to work and use his wages for his own support, thus making it possible for him to use his income from other sources to maintain his dependents, does not defeat their claim of dependency. Moreover, the family arrangement whereby Tabitha's share of the rental from the farm was used for the support and maintenance of Elizabeth did not affect the total amount that the two girls would need for their support and maintenance. Nor does the fact that Elizabeth continued to receive the rents and profits from the farm after the death of her

brother defeat her claim of being a dependent of John. At the time he was fatally injured, and for a number of years prior thereto, he assisted in providing for the support and maintenance of Elizabeth, and upon his death she was deprived of that support. The fact that others, since his death, have assumed that burden cannot have any legal effect upon the right of Elizabeth to compensation; nor is the fact, if it be a fact, that Elizabeth will inherit a part of John's estate, material in determining whether or not she was dependant upon him at the time he was fatally injured. Schneider, Workmen's Compensation Law (2d Ed.) Vol. 2, § 372, p. 1244, and cases there cited.

As heretofore stated in this opinion, E. J. Harness assisted in the support of Tabitha after she and John came to Utah. His policy was to have his brother's children feel their "own responsibility but if they got behind and needed something that was absolutely necessary I helped them. It was always understood that Jack would be self-supporting and would help his sisters." That Jack lived up to that understanding both before and after he came to Utah is supported by ample evidence, and there is no evidence to the contrary. The fact that Elizabeth and Tabitha had an interest in the family farm does not defeat their right to compensation as partial dependents. Schneider, Workmen's Compensation Law, Vol. 2 (2d Ed.) § 371, p. 1235. Upon this record Elizabeth and Tabitha were, as a matter of law, entitled to a finding that they were partially dependent upon their brother John for their support and maintenance at the time he was fatally injured.

A somewhat different question is presented with respect to Jane Harness Poe. At the time of John's death she was 23 years of age. She was and since 1925 had been in training to become a nurse. While in training she was furnished her board, room, and clothing (other than her shoes) and a meager wage of $10 per month. Her testimony as to when John began sending her money, the number of times he had sent her money, and the amount

thereof, is somewhat indefinite. The evidence shows that Jane consented to the family arrangement whereby all of the rental from the farm be used for the support and maintenance of Elizabeth. So far as appears, her share of the rent derived from the farm may have equalled the amount which she received from John. Her testimony was not corroborated, unless it may be said that Mr. Harness' testimony, that he had heard the girls talk about Jack sending money to his sisters, constitutes corroboration. While the evidence touching the dependency of Jane is sufficient to support a finding of dependency, it is not of such character as to require, as a matter of law, a finding of dependency.

From what has been said it follows that the order denying compensation is annulled. This cause is remanded to the Industrial Commission of Utah for such further proceedings, not inconsistent with this opinion, as it may deem proper. The applicants are awarded their costs.

STRAUP, EPHRAIM HANSON, and FOLLAND, JJ., concur.

CHERRY, C. J.
I dissent.