## Miller v. Elkhorn Coal Corporation et al.

Oct. 18, 1940.

Henry Stephens, Judge.

738

Roy Helm for appellant.

W. P. Mayo for appellee Elkhorn Coal Corp.

W. E. Faulkner for appellee Miller.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

The question presented on this appeal involves chiefly a construction of a part of Subsection 3 of 4893, Kentucky Statutes, which recites:

"Partial dependency shall be determined by the proportion of the earnings of the employee which have been contributed to such partial dependent during one year next preceding the date of injury * * *."

The question presented is not involved in controversy between the employer and dependents, since when the matter was before the board, it was stipulated that the deceased, Jerry Miller, and his employer had accepted the provisions of our Compensation Act, and that on June 22, 1938, Jerry was killed as the result of an accident occurring in the course of his employment, and his weekly earnings were sufficient to justify the maximum award.

Both father (appellant) and Jerry Tom, infant son, filed separate claims seeking compensation on the grounds of dependency. At a hearing before a referee the conflicting claims were consolidated "for the purpose of trial only."

After a somewhat comprehensive hearing on the sole question, the referee concluded that appellant here, Tom Miller, was not a dependent within the meaning of the Compensation Act, but awarded Jerry Tom the maximum allowed by law. Thereafter the appellant moved for and was granted a full board review of the referee's findings, which on December 11, 1939, was upheld.

Appellant then filed in the circuit court his petition for review, asking the court to overrule the Board's finding, and direct it to set aside so much of the order as held him not to be a partial dependent, and to award him compensation in conformity with the proof, which he asserted showed that he was in fact a dependent during the year preceding the date of injury. The court upheld the action of the Board.

Deceased received his injury on June 22, 1938, and died the following day. From some unfixed time in 1932, Jerry, his wife and child lived with his brother-in-law, Landon Clemmons, and so continued until some time in 1935. During this period Jerry operated a bus owned by him and Clemmons. For his services in driving the bus, Jerry was to receive about $40 per month and room rent. Jerry stopped the bus operation in 1935, at which time Clemmons owed Jerry $640, as his part of earnings from the bus transactions. The record does not show, says the referee's report, where Tom Miller lived during this period of time, "but it seems reasonably certain that he did not stay with Jerry Miller." We quote further from the referee's report:

"In September of 1935, Jerry ran over and killed a child, and was indicted and convicted of manslaughter, and served two years in the penitentiary. While he was so confined his wife divorced him, and was awarded the custody of the infant son. The child was placed in the home of Tom Miller, Jerry's father, where it seems he stayed until the death of Tom Miller's wife in February, 1938, when he was taken back to the mother's home, where he was at the time of the hearing.

"Jerry Miller returned from his imprisonment about January 1, 1937, to find his wife gone and his home broken up. He went to work in West Virginia for a time, returning to Kentucky he began to work for defendant company on October 1, 1937, and so continued until the time of his death.

"In the case of Tom Miller, no claim is made for total dependency, and the board is called upon to determine the partial dependency, if any, of Tom Miller upon Jerry Miller, estimated by his counsel to be between 25 and 33-1/3%."

Referee quotes the section of the statute supra, and continues:

"Therefore, before an award can be made to Tom Miller, the board must find either that deceased contributed a portion of his 'earnings' to him during the year preceding his death, or that the circumstances, if contributed for less than a year, justify a holding that Tom Miller was dependent in part, upon Jerry Miller. The only reasonable construction to be placed upon the word 'earnings' as used in the statute is that earnings consist of the wages paid to the employe for the work done during the year. Unless so limited, any savings spent upon dependents could be held to be 'earnings' and everybody would be entitled to the maximum compensation, and thus the plain import of the statute would be violated.

"Did Jerry Miller spend any of his 'earnings' during the last year of his life upon Tom Miller: Landon Clemmons testified that he used $500 of the money he owed Jerry for the driving of the bus prior to 1935, in supporting Tom Miller and his wife, mostly the wife, during the last year of Jerry's life. Only one time did Clemmons bring himself to the point of saying that he saw Jerry give his father any money, but he promptly denied any knowledge of how much, or where it came from. There can be little doubt that Jerry Miller did not spend any of his earnings in support of his father during the year preceding his death. The testimony of Clemmons, the lone witness for Tom Miller, showed that besides Jerry, Tom Miller had at least four, maybe five, sons living and able to contribute to the support of the father, to say nothing of the support furnished by Mrs. Clemmons, the daughter. At no point in the record is there any evidence that Tom Miller ever lived with Jerry, or that Jerry ever contributed anything toward his support, except the statements of Landon Clemmons. * * * There being no other evidence to sustain the claim of Tom Miller, his claim must fail."

It appears that of the $640 owing to Jerry, Clemmons paid an attorney's fee of $140; when he came back from serving his sentence in 1937, Jerry learned of

Clemmons having assisted in taking care of the boy, father and mother, besides paying some doctor's bills and said to Clemmons, who then owed him $500, "Well, just consider that debt cancelled." This appears to have occurred before Jerry went to work in the West Virginia mines.

In the report of finding by the full board the writer of the report reviewed the testimony and then quotes 4893, Kentucky Statutes, and says:

"The referee construes the provision of the act above quoted to mean that contributions to a dependent must be made from and be a part of the earnings of the employee for the year next preceding the accident and if his construction of the act is correct his denial of compensation to the plaintiff, Tom Miller, is likewise correct.

"The record justifies the belief that the decedent contributed $500 to the support of his parents during the year next preceding the date of his death, most of which went to the support of the father, the mother having died some four months prior to the death of decedent, but according to the proof, the $500 contributed by decedent to the support of his parents constituted no part of his earnings with the defendant corporation, but was money he had previously earned driving a taxi for his brother-in-law."

As stated, Clemmons, the brother-in-law of deceased, was the only witness who undertook to testify as to the alleged dependency of Jerry's father, and his testimony is of very indefinite and unsatisfactory nature. Aside from the quotations, supra, we find that Pearl Noble and Jerry were married September 19, 1933; divorced about October 9, 1937. Jerry Tom was born in May, 1934. The boy's custody was awarded to the mother when her divorce was granted. The child lived with his grandparents until the death of the grandmother when the mother, at the instance of Jerry, took the child to her home, and Jerry told her he would continue to provide for him.

Clemmons' wife operated a store, and he testified that "they" furnished clothing and other articles from the store for the use of the father, mother and son of

deceased. He says, "We still had the place of business, my wife did, and we were using the money we owed him in the business, and about fifteen months before his mother died (Feb. 1938) she got very ill and it cost a lot of money. We had to keep the family up; pay doctor's bills and everything."

Witness was asked: "During that year, tell the board, how much you and your wife furnished Tom Miller and his family for Jerry under that arrangement that you have told the board about." He indirectly answered: "Well, we owed him a little over $500, and he told me to count his debt even; that it applied to the care of Mr. Miller and his family." He endeavors to fix "that year" as applying to a period of one year just before Jerry's death, though the "arrangement" was made in 1935.

In fixing his estimate, he had no account or record of what he furnished. He said a reasonable cost of care during that period "would be $60 or $70 a month." One son paid the house rent and another furnished coal. Two sons lived with the father, and worked for Blue Diamond.

It is noticeable that witness says he and Jerry settled up "when we got through the trial," and "we didn't agree to go into any agreement to take care of his father, I owed him that much," and he says he used the $640 while Jerry was in the penitentiary. At another point he says the alleged agreement was entered into between himself and Jerry about twelve or fifteen months before the mother died. "We were talking about what I owed him and what we had been out and he said: 'Well, just consider us even.' Of course he was out more than his part, but told me to consider us even." Witness said that a large portion of the $500 was expended for medical services and expenses of Mrs. Miller, though he could or would not give figures, and admits that the entire $500 was consumed prior to Mrs. Miller's death.

Witness admits that after Jerry went to work in West Virginia (Jan. 1937) and while working for Elkhorn (Sept. 1937 to June 22, 1938) he did not send to or give the father anything, "except one time in the store he gave Mr. Miller some money." Jerry had signed a card when he went to work for the coal com-

pany, Sept. 29, 1937, on which he stated that he had no dependents; this was after the wife had begun divorce proceedings. He made very little money while working for the Elkhorn Coal Company. He was paid in scrip and drew very little cash; he drank, gambled, smoked, visited roadhouses, and was in jail several times.

The proof here shows clearly that Jerry Miller contributed nothing from his earnings during the year preceding the date of the fatal accident. We do not mean by saying this, as did the board, that he contributed nothing from his weekly wages "paid by the corporation" for the immediately preceding year. We are not called upon to determine the question as to whether or not the statute means that partial dependency is to be determined by limiting contributions out of a previous year's earnings from any particular corporation.

The sole question here is whether the relation of dependency (partial) depends on contributions from earnings for the preceding year. We are not concerned with the latter part of the section under question which is applied to determine the proportion of partial dependency in cases where the relation existed only for a part of a year. It is well settled in this and various jurisdictions that the relation of dependency is to be determined as of the time of the accident. Our statute provides "all relations of dependency herein referred to shall be construed to mean dependency existing at the time of accident." Section 4893, Subdivision 4.

There can be no escape from the conclusion that when the Board and the courts come to determine— not the amount which might or should be awarded—but the existence of partial dependency, the test is the "proportion of the earnings of the employee which have been contributed to such partial dependent during one year next preceding the date of injury." Statutes, Section 4893, Subdivision 3, supra. The measure of what may be received by a total dependent is fixed on a weekly earning's basis, and proportioned where there are partial dependents.

While the question before us has not heretofore been so sharply presented, we have in several cases given our views as to the meaning of the statute in question. In the case of R. C. Tway Coal Co. v. Fitts, 222 Ky. 644, 1 S. W. (2d) 1082, 1083, the question was

whether or not a mother was a total dependent; under the proof we found "sole support" and total dependency on somewhat meager testimony; there was no controversy there as between classes of dependents, but the employer was insisting that since the evidence showed that deceased had given his mother only $100 during the year preceding his death, compensation should have been awarded on the basis of one-sixth of his earnings during the previous year. We said:

> "It is only in cases of partial dependency that the compensation is determined by the proportion of the earnings of the employee which have been contributed to such partial dependent during one year next preceding the date of the injury. Section 4893, Kentucky Statutes, Subsection 3."

In United States C. & C. Co. v. Sutton, 268 Ky. 405, 105 S. W. (2d) 173, 177, we quoted the Fitts case and said: "The statutory direction for determining the compensation * *. * is found in Section 4893, Subsection 3, Kentucky Statutes," and quoted same. The mother of deceased was allowed as a partial, and on appeal was claiming as a total, dependent. We held partial dependency, and fixed her compensation on the amount of weekly earnings received by deceased for a portion of a year. The first part of Subsection 3 of Section 4893 appears to us to fix clearly the compensation to be paid, after partial dependency has been determined. See Hardymon Co. v. Kaze, 241 Ky. 252, 43 S. W. (2d) 678; Kentucky Coke Co. v. Baker, 242 Ky. 807, 47 S. W. (2d) 721.

It is apparent that insofar as our cases are concerned, the statute quoted above is the only portion of the law which undertakes to provide for the determination of partial dependency, and counsel for appellant has pointed to no other, but seems to rely on that portion which allocates to total and partial dependents, where both relations exist, or the fixing of partial compensation in proportion to total dependency, Penn v. Penn, 183 Ky. 228, 209 S. W. 53, but in most, if not all the cases we have reviewed, partial dependency has been based upon the earnings of the decedent during the previous year. The difference in the determining rules is recognized in Kelse Branch Coal Co. v. Spradlin's Guardian, 222 Ky. 432, 300 S. W. 892, 894, in which we said:

"Our Workmen's Compensation Act provides different methods for determining total and partial dependency. Total dependency exists if the dependent receives all of his support from the deceased employee, regardless of the proportion of the employee's wages contributed to the dependent. Partial dependency exists if the dependent receives less than his entire support from the employee and the degree of dependency is determined by the proportion of the employee's wages contributed to the dependent."

Counsel for appellant has not furnished us with any citations which throw light on his construction of the involved statutes. It is said in brief, quoting Kentucky Statutes, Section 4894, which provides, not that the father is per se a dependent, but "no person shall be considered a dependent in any degree unless he be living in the household of the employee at the time of the accident, or unless such person bears to the employee the relation of father." Appellant then says:

"In Kentucky then it is immaterial whether the support comes from wages or other income. This question does not appear to have been passed upon by this court, but has in a number of other jurisdictions."

He then cites 71 C. J. 535:

"It is immaterial * * * whether the support comes from wages or other income, unless the statute defines dependency as based on the employee's earnings."

This in a measure militates against appellant, since the cases cited above appear to base dependency, or the amount of the award, on contributions from earnings during the year preceding the injury. Reference is made to Compensation Acts of other states, Michigan, Utah, Massachusetts, and perhaps others, and the provisions quoted relating to the manner of determining dependency, or allocating the award after dependency is determined. A number of these statutes and construing opinions are referred to in Workmen's Compensation Law, Schneider, Vol. 2, under Sections 367, 368 and a perusal will demonstrate the futility of an attempt at reconciliation because of the wide diversity in

their provisions, and their application by the courts of the several jurisdictions. In case of In Re Derinza, 229 Mass. 435, 118 N. E. 942, 947, the court said:

"The terms of our act award compensation to those dependent upon the 'earnings' of the deceased employe, and not to those supported by him, differing thus from the statutes of some other jurisdictions."

In Harness v. Ind. Comm., 81 Utah 276, 17 P. (2d) 277, 280, it was held that because the employee chose to use his earnings for his own support, permitting him to use income from other sources to maintain dependent sisters, did not defeat their claim of dependency, saying:

"Our Industrial Act, unlike some, does not require that dependency to entitle one to compensation must be paid from the earnings of the employee."

In the case of Blozina v. Castile Mining Co., 210 Mich. 349, 178 N. W. 57, 58, the question discussed was as to whether dependency, or the extent thereof, was to be fixed by the earnings of the deceased, or from contributions from rents received. The statute in Michigan, Comp. Laws 1915, Section 5435, provided that the relationship existed if claimant had depended "wholly * * * upon his earnings for support at the time of the injury."

The court gave the provisions of the statute a strict construction. It cited the Derinza case, supra, and the Minnesota case of State ex rel. Crookston Lumber Co. v. Dist. Court, 131 Minn. 27, 154 N. W. 509, and referred to two other Massachusetts' cases, wherein it had been said:

"Therefore in the case at bar, the finding can be supported only if the wife could be found to have been totally dependent upon the earnings of her deceased husband, and not upon investment of his property. This is so, giving to 'earnings' the broadest meaning of which it reasonably is susceptible. Jenks v. Dyer, 102 Mass. 235; Chester v. McDonald, 185 Mass. 54 [69 N. E. 1075]. * * * Our attention has not been called to the decision of the court of last resort of any other state having similar provisions to ours, nor has our investigation led us to one where a contrary doctrine has been announced. * * * We are persuaded that we

should follow the holding of the Massachusetts' court. The language of our act expressly states 'dependent upon his earnings for support.' * * * The Legislature of this state saw fit to use the precise language of the Massachusetts act and to purposely use the word 'earnings.' We may not eliminate it from our consideration, nor modify it by some other inapplicable portion of the act. The section under consideration deals exclusively with the question of dependency and is quite complete in itself.''

In another Minnesota case, State ex rel. Fleckenstien Brewing Co. v. Dist. Court, 134 Minn. 324, 159 N. W. 755, it was held that the test of dependency is not whether the parents could support life without the contributions from the child, but whether they regularly received from his wages part of his income as a means of their living, and in two Minnesota cases award for partial dependency was denied on the ground that it had not been shown that deceased employee had regularly contributed part of his wages or earnings to the support of his parents, though he had contributed at casual or irregular intervals. Bartkey v. Farm Dairies, 170 Minn. 159, 212 N. W. 175; Bengston v. Siems, 173 Minn. 498, 217 N. W. 679.

The case of Fourseams Coal Corp. v. Cooke, 273 Ky. 167, 116 S. W. (2d) 337, 338, with the aid of the record on appeal, throws some light on the question. In that case the contest was between employer and the partial dependent. The Board had decreed partial dependency to the extent of 75% of the earnings. Appellant was contending that 20% was a nearer correct amount. The deceased had been working but a short while before he was killed. He had worked in the shop with his father. The board took into consideration that the boy had contributed ''freely of his labor to his father, and later of his earned wages in the mines, during the last year next before the fatal accident.''

In the opinion it was stated that appellant practically admitted a 20% dependency. The opinion then quotes Subsection 3 of Section 4893, Kentucky Statutes, and recites:

''Some question is made in brief by counsel for appellant as to a statement in the award of the board

concerning the test by which the measure of dependency was to be determined, but a careful reading of the opinion of the referee and the opinion of the board on full hearing discloses that the board meant to and did under the evidence determine the dependency in conformity with the above quoted provisions of the Compensation Law.''

By reference to the finding of the referee and later the board, we find the following:

''It is a settled proposition of law that the extent of partial dependency shall be determined by the proportion of the earnings of the employe which have been contributed to such partial dependent during the period of one year next preceding his injury.''

In compensation cases the burden of proving dependency is on the claimant. Kingston Coal Mining Co. v. Darnell, 236 Ky. 496, 33 S. W. (2d) 356, and parents of deceased employees are not conclusively presumed to be dependents. The relationship is to be determined by the Board from the facts. Damron v. Workmen's Comp. Board, 267 Ky. 281, 102 S. W. (2d) 23; Black Star Coal Co. v. Collins, 236 Ky. 39, 32 S. W. (2d) 540.

After a careful study of the proof, we conclude that it shows deceased did not contribute any part of his earnings to claimant in the year next preceding the date of his injury; and it may be readily gathered that during the last year of his life, deceased did not look upon his father as a dependent in any degree.

We, therefore, conclude that the finding of the board and the court was correct, and the judgment should be and is affirmed.