**STEVEN LEE ENTERPRISES,**
**Appellant,**

v.

Tressa **VARNEY,** Mother and Natural Guardian of Samantha Danielle Varney, Infant Daughter of Danny Varney, Deceased; Robert Whittaker, Director of Special Fund; Denis S. Kline, Administrative Law Judge; and Workers' Compensation Board, Appellees.

and

**Robert L. Whittaker, Director of Special Fund, Appellant,**

v.

Tressa Varney, Mother and Natural Guardian of Samantha Danielle Varney, Infant Daughter of Danny Varney, Deceased; Steven Lee Enterprises; Denis S. Kline, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 1999–SC–0129–WC,
1999–SC–0165–WC.

Supreme Court of Kentucky.

Nov. 22, 2000.

Rehearing Denied Feb. 22, 2001.

David H. Neeley, Neeley & Reynolds Law Firm, P.S.C., Prestonsburg, Counsel for Steven Lee Enterprises.

David W. Barr, Kentucky Labor Cabinet, Division of Special Fund, Frankfort, Counsel for Robert L. Whittaker, Etc.

Robert J. Greene, Kelsey E. Friend Law Firm, Pikeville, Counsel for Tressa Varney, etc.

COOPER, Justice.

Danny Varney became disabled by pneumoconiosis on March 5, 1988. He filed his verified application for adjustment of claim in May 1988. His application identified his wife as Ardena Varney and his dependent children as Darrell Varney, Danny Varney and Jason Varney, all residing with him at General Delivery, Kimper, Kentucky. Varney was found to be totally disabled under the 1988 version of KRS 342.732(1)(d) and was awarded workers' compensation benefits, which were apportioned 25% against the employer and 75% against the Special Fund as then required by KRS 342.316(10)(a). The claimant in this case, Samantha Varney, was born of Danny Varney and Tressa Sue Brewster on December 29, 1993. The record does not reflect when Danny divorced Ardena Varney; but he married Brewster in January 1994 and subsequently divorced her in July 1995. Varney died as a result of his pneumoconiosis on December 10, 1996. On January 10, 1997, Tressa Brewster Varney filed this motion to reopen Danny Varney's workers' compensation claim for the purpose of obtaining death benefits for Samantha under KRS 342.730(3). (Since it is undisputed that Varney died as a result of his compensable disease, Samantha's claim for benefits should have been brought under KRS 342 .750(1)(d).)

By its own language, KRS 342.750 applies only to deaths caused by work-related injuries. Its provisions are made applicable to deaths caused by occupational diseases by KRS 342.316(4), now (5)(c), and KRS 342.316(7), now (8). At all relevant times, KRS 342.316(7) provided:

No compensation for death from occupational disease shall be payable to any person whose relationship to the deceased, which, under the provisions of this chapter would give right to compensation, arose, subsequent to the beginning of the first compensable disability, save only to after-born children of a marriage existing at the beginning of such disability.

Relying on this statute, both the Administrative Law Judge (ALJ) and the Workers' Compensation Board denied Samantha's claim for death benefits. The Court of Appeals, however, found that because the statute compensated only after-born children of a marriage existing when the deceased worker's disability began, it impermissibly discriminated against after-born illegitimate children such as Samantha. For that reason, the Court of Appeals declared the statute to be in violation of the Equal Protection Clauses of the United States and Kentucky Constitutions and, thus, invalid. U.S. Const., amend. XIV, Ky. Const. § 3.

■ KRS 342.316(7), now (8), is but a codification of what we have consistently recognized as a basic principle of workers' compensation law, *i.e.*, entitlement to benefits is determined as of the date of the compensable event, which, with respect to an occupational disease, is the date of the last injurious exposure or the date of actual disability, whichever is later. KRS 342.316(1)(b). *E.g., Newberg v. Davis,* Ky., 867 S.W.2d 193 (1993) (widow's entitlement to death benefits is governed by the law in effect on the date of the worker's last injurious exposure rather than on the date

of his death); *Vogt & Conant Co. v. Boelhauf*, Ky., 317 S.W.2d 163 (1958) (relationship of dependency must be determined in accordance with the facts existing at the time of the accident); *Miller v. Elkhorn Coal Corp.*, 284 Ky. 737, 145 S.W.2d 822 (1940) (dependency for purposes of workers' compensation is determined as of the time of the accident); *Franklin Fluorspar Co. v. Bell*, 247 Ky. 507, 57 S.W.2d 481 (1933) (the object of the Workers' Compensation Act is to compensate those who were dependent on the employee at the time of the accident). Unlike the Court of Appeals, we do not view KRS 342.316(7), now (8), as discriminating against after-born children of a marriage which did not exist on the date of the compensable event. Rather, we agree with the ALJ's observation that the statute is, in fact, a saving statute which *extends* benefits to after-born children of a marriage existing on the date of the compensable event. Otherwise, no after-born children would be entitled to benefits. But even if we agreed with the Court of Appeals on that issue, we would still disagree with the equal protection analysis applied by that Court to this statute.

A statute challenged on equal protection grounds is subject to "strict scrutiny," *i.e.*, sustainable only if the statute is suitably tailored to serve a "compelling state interest," if it affects a fundamental right or a suspect classification, such as race, alienage or ancestry. *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). However, if the statute merely affects social or economic policy, it is subject only to "rational basis" analysis. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). In *Wynn v. Ibold, Inc.*, Ky., 969 S.W.2d 695 (1998), we rejected an equal protection challenge to KRS 342.730(4) (the so-called "tier-down"

statute), holding that workers' compensation statutes affect only economic policy and matters of social welfare, as opposed to fundamental rights or suspect classes; thus, the statute did not violate the Equal Protection Clause since it was "*rationally related* to a legitimate state objective." *Wynn v. Ibold, Inc., supra*, at 696 (emphasis added).

The Court of Appeals correctly identified illegitimacy as a "suspect classification," which, like gender, is subject to a higher level of scrutiny than mere "rational basis" analysis. *Lalli v. Lalli*, 439 U.S. 259, 265, 99 S.Ct. 518, 523, 58 L.Ed.2d 503 (1978); *Weber v. Aetna Cas. & Sur. Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). Under this higher standard, usually referred to as "heightened scrutiny," discriminatory laws survive equal protection analysis only "to the extent they are *substantially related* to a legitimate state interest." *City of Cleburne v. Cleburne Living Center, Inc., supra*, at 441, 105 S.Ct. at 3255 (emphasis added). KRS 342.316(7), now (8), is substantially related to two legitimate state interests: (1) to compensate members of the deceased worker's family as it existed on date of the compensable event, per *Franklin Fluorspar Co. v. Bell, supra*, plus after-born children of that marriage; and (2) "to reduce the overall cost of maintaining the workers' compensation system, thereby improving the economic climate for all the citizens of the state," per *Wynn v. Ibold, Inc., supra*, at 697.

Nevertheless, KRS 342.316(7), now (8), does not discriminate against Samantha Varney because of her illegitimate birth. The statute would deny benefits to her *even if her parents had been married to each other on the date of her birth*, December 29, 1993. The statute denies her benefits *because her parents were not married to each other on the date of the compensable event*, March 5, 1988.[1] On that date,

---

**1.** For the same reason, the statute would have denied death benefits to Samantha's mother, Tressa Brewster Varney, even if she had been married to Danny Varney at the time of his death.

Danny Varney was married to someone else and had three dependent children by that marriage who *would* have been entitled to benefits upon his death if they satisfied any of the criteria listed in KRS 342.750(1)(e), *i.e.,* under the age of eighteen, actually dependent, or a full-time student under the age of twenty-two.

Since Samantha is not being denied benefits because of her illegitimacy, KRS 342.316(7), now (8), is subject only to "rational basis" analysis, not to "strict scrutiny" or "heightened scrutiny." It is appropriate, therefore, to revisit the nature of that inquiry. The best summary of what rational basis analysis entails and what it does not entail is that set forth in *Heller v. Doe by Doe,* 509 U.S. 312, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993), in which the United States Supreme Court analyzed two Kentucky statutes, KRS 202A.076(2) and KRS 202B.160(2), and discerned no violation of the Equal Protection Clause.

We many times have said, and but weeks ago repeated, that rational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." ... Nor does it authorize "the judiciary [to] sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." ... For these reasons, a classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity.... Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.... Further, a legislature that creates these categories need not "actually articulate at any time the purpose or rationale supporting its classification." ... Instead, a classification "must be upheld against equal protection challenge *if there is any reasonably conceivable state of facts* that could

provide a rational basis for the classification." ...

A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." ... A statute is presumed constitutional, ... and "[t]he burden is on the one attacking the legislative arrangement *to negative every conceivable basis which might support it,*" ... whether or not the basis has a foundation in the record. Finally, courts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it " 'is not made with mathematical nicety or because in practice it results in some inequality.' " ... "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific."

*Id.* at 319–21, 113 S.Ct. at 2642–43 (citations omitted) (emphasis added).

■ Accordingly, if there is any "reasonably conceivable state of facts" supporting the perceived discrimination in KRS 342.316(7), now (8), the statute does not violate the Equal Protection Clause and must be upheld even if it is perceived to be unwise, unfair or illogical. In fact, there are numerous "reasonably conceivable" factual bases supporting the General Assembly's decision to extend death benefits for occupational diseases to after-born children of a marriage existing on the date of the compensable event, but not to after-born children of subsequent marriages (or, for that matter, to after-acquired spouses, new stepbrothers and stepsisters, new brothers and sisters by the half-blood, new stepparents, and the children of newly adopted children or newly acquired stepchildren, all of whom would be entitled to benefits per KRS 342.085 and KRS

342.750(1)(f), (g) if KRS 342.316(7), now (8), is declared invalid).

Unlike deaths from compensable *injuries*, deaths from compensable diseases normally do not occur simultaneously with or shortly after the compensable event. As here, a worker afflicted with an occupational disease may linger for years before finally succumbing to its effects. In the interim, the disabled worker could confer a continuation of his benefits upon literally generations of after-acquired relatives by, *e.g.*, marrying a friend or relative's child or grandchild, marrying a much younger spouse with infant stepchildren, or adopting his or her spouse's nieces, nephews or grandchildren in contemplation of his own death. In this regard, it is appropriate to note that according to official records of the Department of Veterans Affairs, the last dependent of a Revolutionary War veteran died in 1911 and the last dependent of a veteran of the War of 1812 died in 1946; and that as of July 1, 1998, the V.A. was still paying pension benefits to one surviving spouse and fourteen surviving children of Civil War veterans and to 570 surviving spouses and 309 surviving children of Spanish–American War veterans.[2]

■ By enacting KRS 342.316(7), now (8), the General Assembly limited death benefits for occupational diseases to those persons related to the disabled worker as of the date of the compensable event, plus *after-born children of a marriage existing on that date*. By excluding all other after-acquired relatives, the General Assembly gave the employer, its insurer and the Special Fund a reasonable basis to anticipate the amount and duration of their potential liability for a particular claim and to establish reasonable monetary reserves to cover that liability. In doing so, the statute reduces the overall cost of maintaining the workers' compensation system and thereby improves the economic climate for all citizens of the Commonwealth. *Wynn*

*v. Ibold, Inc., supra,* at 697. Thus, as in *Wynn,* there is a rational basis for what Samantha Varney perceives as discrimination against after-acquired relatives in KRS 342.316(7), now (8). That being the case, even if the statute did discriminate against after-acquired relatives, it would not violate the Equal Protection Clauses of the United States and/or Kentucky Constitutions.

Accordingly, we reverse the Court of Appeals and reinstate the orders of the ALJ and the Workers' Compensation Board dismissing Samantha Varney's claim for death benefits.

GRAVES, JOHNSTONE, and KELLER, JJ., concur.

STUMBO, J., dissents by separate opinion, with LAMBERT, C.J., and WINTERSHEIMER, J., joining that dissent.

STUMBO, Justice, dissenting.

Respectfully, I must dissent. I do not believe that KRS 342.316(7) can withstand equal protection scrutiny. I can find no legitimate state interest, substantial or otherwise, for distinguishing between the two classes of after-born children. KRS 342.316(7) discriminates between after-born children born of a marriage in existence at the time the disability commenced, and after-born children who were not born of a marriage in existence at the time the disability commenced. While the statute does not discriminate among after-born children based upon the status of legitimacy, it does so on a far less tangible basis: the timing of the child's birth. Both illegitimacy and the timing of birth are beyond the individual's control and bear "no relation to the individual's ability to participate in and contribute to society." *Mathews v. Lucas,* 427 U.S. 495, 505, 96 S.Ct. 2755, 2762, 49 L.Ed.2d 651, 660 (1976). Consequently, the statutory classi-

**2.** Department of Veterans Affairs, *America's Wars* (visited Aug. 2, 2000) <http://www.va.gov/pressrel/Am-Wars99.htm>.

fication is subject to the heightened scrutiny standard of review.

Steven Lee argues that the limitation on the payment of occupational disease benefits is a legitimate attempt on the part of the legislature to contain the number of persons to whom employers would be liable for payment of continuation benefits. The General Assembly has a legitimate interest in limiting potential claims in order to preserve the integrity of the workers' compensation system. *Mullins v. Manning Coal Corp.*, Ky., 938 S.W.2d 260, 263 (1997). However, KRS 342.316(7) does not further the legitimate interest of limiting the liability of the employer or the Special Fund for payment of continuation benefits. Under KRS 342.750, the employer or the Special Fund may be liable for payment of continuation benefits to children who are not in existence at the time the award was made.

KRS 342.316(7) arbitrarily discriminates between after-born children who are born of a marriage in existence at the time of the worker's disability began and those who were not. The statute cuts off the right of certain after-born children from receiving continuation benefits from a deceased parent. Yet, in doing so, it does not further a legitimate state interest or base this distinction upon any rational or substantial bases. As a result, I would find that KRS 342.316(7) is unconstitutional as a violation of Samantha's right to equal protection of the law.

LAMBERT, C.J., and WINTERSHIMER, J., join this dissent.