D.F., the Natural Parent and Next Friend of M.F., a Minor, on Behalf of Themselves and all Others Similarly Situated, Appellants,

v.

James C. CODELL, III, Secretary of the Transportation Cabinet, Commonwealth of Kentucky; Thomas Boyson (Now Wilmer C. Cody), Secretary of the Department of Education, Commonwealth of Kentucky; Kentucky State Board for Elementary and Secondary Education (Now the Kentucky Board of Education); and Calloway County School Board, Appellees.

No. 2001–SC–0718–DG.

Supreme Court of Kentucky.

Dec. 18, 2003.

Rehearing Denied March 18, 2004.

Randall Alan Hutchens, Max W. Parker, Murray, Counsel for Appellants.

Mary R. Harville, Trevor L. Earl, Reed Weitkamp Schell & Vice PLLC, Louisville, Counsel for Appellee, James C. Codell, III, Secretary of the Transportation Cabinet, Commonwealth of Kentucky.

Robert V. Bullock, Assistant Attorney General, D. Brent Irvin, Assistant Attorney General, Civil & Environmental Law Division, Office of the Attorney General, Frankfort, Counsel for Appellees, Thomas Boyson (Now Wilmer C. Cody), Secretary of the Department of Education, Commonwealth of Kentucky, and Kentucky State Board for Elementary and Secondary Education (Now the Kentucky Board of Education).

Richard W. Jones, Hurt & Jones, Murray, Michael A. Owsley, English, Lucas,

Priest & Owsley, Bowling Green, Counsel for Appellee, Calloway County School Board.

JOHNSTONE, Justice.

This class action challenges the constitutionality of KRS 159.051, Kentucky's "no pass-no drive" law. The trial court struck the statute down on a variety of grounds, including the conclusion that the statute unlawfully discriminates against students with educational disabilities and because the statute violates students' constitutional rights to equal protection under the law and substantive due process. The Court of Appeals reversed the trial court and held that the statute was constitutional. We granted discretionary review, and reverse the Court of Appeals based on our conclusion that the statute violates equal protection under the law.

**I. Facts and Procedural History**

KRS 159.051 provides that when a 16 or 17 year old student drops out of school or is declared to be academically deficient, the school principal "shall notify the superintendent" who "shall report the student's name and Social Security number to the Transportation Cabinet." The Transportation Cabinet shall then revoke or deny the student's operator's license, permit, or privilege to operate a motor vehicle.

Revocation or denial of driving privileges only applies to students who attend school or reside in school districts which "operate an alternative education program approved by the Department of Education designed to meet the learning needs of students who are unable to succeed in the regular program." KRS 159.051. In other words, the "no pass-no drive" law only affects students in school districts that have implemented alternative education programs. Students in school districts that do not have alternative education programs will not lose their driver's licenses if

they drop out of school or are declared academically deficient.

The original plaintiff was a minor, M.F., who attended Calloway County High School ("CCHS") in Western Kentucky. CCHS has an alternative education program. M.F., however, who has a learning disability, was enrolled in CCHS's regular academic program, rather than the alternative education program. M.F., despite her best efforts, was declared academically deficient and, as a result, lost her driver's license. During the course of litigation, the trial court certified the case as a class action. The class consists of all students who are currently affected by KRS 159.051 and all students who will or may be affected by the statute in the future.

Simultaneously with filing suit, M.F. filed a complaint with the United States Department of Education ("DOE") alleging that the "no pass-no drive" law violates the federal Family Education Rights and Purposes Act of 1974 ("FERPA"). 20 U.S.C. § 1232g. FERPA provides that students' educational records are privileged and confidential unless students' parents or guardians specifically waive those rights. After investigating the complaint, the DOE wrote a letter finding that KRS 159.051 violated FERPA because (1) KRS 159.051 requires impermissible disclosure of personally identifiable information from an educational record, and (2) disclosure of educational records under KRS 159.051 occurs without prior written consent of the students' parents or guardians. In response to this finding, the Director of the Division of Driver Licensing at Kentucky's Department of Transportation ("DOT") sent a memorandum to all circuit court clerks ordering them to "destroy" all existing parent/guardian consent-to-liability forms, TC–30 Rev. 09/95. In their place, the DOT Director ordered circuit court clerks to use a new DOT form, TC 94–30,

which required a parent or guardian to consent to the release of his/her child's educational records as part of the regular driver's license procedure for minors.

The trial court held KRS 159.051 unconstitutional on equal protection and substantive due process grounds and permanently enjoined the DOT from using form TC 94–30. The Court of Appeals reversed, holding that KRS 159.051 is constitutional and that the DOT's creation of a new waiver form constituted an appropriate regulatory action under KRS Chapter 13A.

We granted discretionary review and reverse the Court of Appeals because KRS 159.051 violates the basic and fundamental right to equal protection under the law.

## II. Discussion

■■■ Citizens of Kentucky are entitled to equal protection of the law under the 14th Amendment of the United States Constitution and Sections 1, 2, and 3 of the Kentucky Constitution. *Commonwealth v. Howard,* Ky., 969 S.W.2d 700, 702 (1998). The Equal Protection Clause applies to all governmental activity, whether legislative, executive, or judicial and not only protects groups of persons, but also applies to individuals who have not alleged membership in a particular class. *Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). This is consistent with the simple goal of the Equal Protection Clause to "keep[ ] governmental decision makers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn,* 505 U.S. 1, 10, 112 S.Ct. 2326, 2331, 120 L.Ed.2d 1 (1992). But, as a practical matter, nearly all legislation differentiates in some manner between different classes of persons, and the Equal Protection Clause does not forbid such classifications *per se. Romer v. Evans,* 517 U.S. 620, 631, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996). Nor are all

equal protection challenges reviewed equally. The level of judicial scrutiny applied to such challenges depends on the classification made in the statute and the interests affected by it. *See Memorial Hospital v. Maricopa County,* 415 U.S. 250, 253, 94 S.Ct. 1076, 1079, 39 L.Ed.2d 306, 312 (1974).

■■■ Currently, there are three levels of review: rational basis, strict scrutiny, and the seldom used intermediate scrutiny, which falls somewhere between the other two. *See, e.g., Steven Lee Enterprises v. Varney,* Ky., 36 S.W.3d 391, 394–95 (2000). Strict scrutiny applies whenever a statute makes a classification on the basis of a "suspect class," such as race, *Grutter v. Bollinger,* 539 U.S. 306, 123 S.Ct. 2325, 2337, 156 L.Ed.2d 304, 331 (2003), or when a statute significantly interferes with the exercise of a fundamental right. *Zablocki v. Redhail,* 434 U.S. 374, 387, 98 S.Ct. 673, 681, 54 L.Ed.2d 618, 631 (1978). Under this highest standard of review, the challenged statute can survive only if it is suitably tailored to serve a "compelling state interest." *Varney,* 36 S.W.3d at 394. On the other hand, "if the statute merely affects social or economic policy, it is subject only to a 'rational basis' analysis." *Id.* Under this standard of review "[l]egislative distinctions between persons ... must bear a rational relationship to a legitimate state end." *Chapman v. Gorman,* Ky., 839 S.W.2d 232, 239 (1992). Between the rational basis and strict scrutiny tiers of review, an intermediate scrutiny "fashion[s] constitutional protections" for groups, like women, who are not "suspect classes" but who "have been historically victimized by intense and irrational discrimination." *Montgomery v. Carr,* 101 F.3d 1117, 1121 (6th Cir.1996); *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). "Under this higher standard, usually referred to as heightened

scrutiny, discriminatory laws survive equal protection analysis only to the extent they are *substantially related* to a legitimate state interest." *Varney*, 36 S.W.3d at 394 (emphasis in the original and internal quotation marks omitted).

■ In the case at bar, the trial court applied the rational basis test, even though it concluded that KRS 159.051 "infringes on the fundamental education rights of the students in this Commonwealth." Of course, if a statute fails the rational basis test it, it certainly would fail to pass strict scrutiny. Thus, the trial court pragmatically decided this issue under a rational basis analysis rather than applying strict scrutiny, which would otherwise flow from its conclusion that the statute burdened the exercise of a fundamental right. The Court of Appeals rejected out of hand the trial court's conclusion that the statute infringed upon the exercise of a fundamental right, though it had no quarrel with the trial court's position that the right to an adequate education is a fundamental right under the Kentucky Constitution. *See Rose v. Council for Better Education, Inc.*, Ky., 790 S.W.2d 186, 212 (1989) (interpreting Section 183 of the Kentucky Constitution); *see also San Antonio Independent School Dist. v. Rodriguez*, 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16, 43 (1973). ("Fundamental rights" are those rights "explicitly or implicitly guaranteed by the Constitution.") We agree with the Court of Appeals that KRS 159.051 does not infringe on any student's fundamental right to an adequate education as provided for in the Kentucky Constitution, though we disagree with its conclusion that the statute does not violate Appellants' right to equal protection under the law.

*Rose v. Council for Better Education, Inc., supra*, is the seminal case on the fundamental right to an education within the Commonwealth. This right derives from Section 183 of the Kentucky Constitution, which provides that "[t]he General Assembly shall, by appropriate legislation, provide for an efficient system of common schools throughout the State." *Rose* concerned a challenge to the constitutionality of the Commonwealth's common school system, which required us to determine the meaning of the phrase "efficient system of common schools." This we did by conducting a thorough analysis of existing legal precedent and the relevant discussion contained in the 1890 Constitutional Debates. *Rose*, 790 S.W.2d at 205–12. At the conclusion of this analysis, we held that the "essential, and minimal, characteristics of an 'efficient' system of common schools" included the fundamental right to an adequate education. *Id.* at 213. In turn, we concluded that an adequate education must provide each and every student within the Commonwealth the opportunity to learn and develop seven different intellectual, physical, and social capacities. *Id.* at 212.

■ KRS 159.051 in no way interferes with a student's fundamental right to pursue and achieve these important educational "capacities." Rather, the statute simply attaches adverse consequences to academic failure. As made clear in *Rose*, one of the most important components of an efficient system of common schools is that every student in the Commonwealth, regardless of wealth or geographic location, is guaranteed the right to the same educational opportunities. *Rose*, 790 S.W.2d at 207. Thus, the fundamental right to an education includes the right to the equal opportunity to achieve academic success. But it includes no guarantee of success itself. With the pursuit of excellence comes the risk of failure. If the failure or the refusal to take advantage of the opportunity guaranteed by the Kentucky Constitution carried no adverse consequences, then the right to an education would have

very little meaning or value. While the statute adds marginally to the ill effects of not achieving academic success, it does not increase the risk of failure itself. The statute in no way limits a student's right to seize the opportunity to learn and better himself or herself. Therefore, because KRS 159.051 neither infringes upon a fundamental right, nor classifies on the basis of a suspect class, we apply a rational basis review to the question of whether the statute violates Appellants' equal protection rights.

The trial court examined two different classifications created by the statute: (1) the age-based classification made *between* 16 and 17 year old students who were subject to losing their licenses under the statute, *and* 18 year old students who were not subject to losing their licenses; and (2) the geographically-based distinction made *between* students who lived in counties with an alternative education plan (which made them subject to losing their licenses under the statute) *and* students who lived in counties without an alternative education plan (which precluded them from being subject to losing their licenses under the statute). The trial court concluded that there was no rational basis for either classification. We disagree with its conclusion with regard to the age-based classification, but we agree with its conclusion with regard to the geographic-based classification.

 Eighteen is the age of legal majority in the Commonwealth, with the exception of the right to purchase alcoholic beverages and the right to care for and treat children with disabilities. KRS 2.015. The consequences, both in terms of privileges and obligations, that attach to this occurrence are too vast and wide ranging to list here. This substantial change in legal status is, by itself, a sufficient and rational reason for making the age-based classification between non-legal majority students and legal majority students. The situation is vastly different, however, under the geographic-based classification.

 The Commonwealth asserts that KRS 159.051 was enacted in order to deter 16 and 17 year old students from dropping out of school and to encourage them to achieve at least a minimum academic proficiency, *i.e.*, to deter these students from becoming "academically deficient." But this particular "encouragement" is available only to those students whose "local school district ... operate[s] an alternative education program approved by the Department of Education designed to meet the learning needs of students who are unable to succeed in the regular program." KRS 159.051(2). There is nothing to indicate that an alternative education program adds anything to the existing statutory requirements that obligate local school districts to meet the unique learning needs of students with learning and other disabilities. *See* KRS 157.200 *et seq.;* 20 U.S.C. § 1400 *et seq.* In other words, if, as Appellees argue, the alternative education program is designed to meet the academic needs of students who are unable to succeed in a school system's regular program, *i.e.*, students with physical and/or learning disabilities, then the alternative education program required by the statute is a redundancy. That is, regardless of whether a local school district has an alternative education plan in place, the school district is still required to provide for the needs of those students with physical and/or learning disabilities that might prevent them from succeeding academically in the school system's regular program. On the other hand, if, as Appellants argue, the purpose of the alternate education program is to establish an alternative school for students with disciplinary

problems, then the establishment of an alternative education program creates no nexus between the classification made in the statute and the asserted purpose of the law. Neither scenario provides a rational basis for using the existence of an alternative education program as the basis for classifying which students are subject to having their driver's licenses revoked or denied.

For the reasons set forth above, we hold that KRS 159.051 violates Appellants' rights to equal protection under the law and, therefore, we hold that the statute is unconstitutional. This holding renders all other issues raised on appeal moot, including the challenge made to the DOT form, because the Department of Transportation's authority for creating and issuing the form derives from the statute itself, which we now hold to be unconstitutional.

Therefore, we reverse the decision of the Court of Appeals and remand this case to the trial court for entry of a judgment consistent with this opinion.

GRAVES, KELLER, and STUMBO, JJ., concur.

COOPER, J., dissents by separate opinion, with LAMBERT, C.J., and WINTERSHEIMER, J., joining that dissent.

COOPER, Justice, dissenting.

Numerous issues pertaining to the validity of KRS 159.051 and its implementation have been raised and briefed in this class action. Since the majority opinion has invalidated the statute solely on equal protection grounds, this dissent will be confined to that issue. I have no quarrel with the legal principles outlined in the majority opinion. However, I disagree with the application of those principles to this statute. The majority concludes that KRS 159.051 denies equal protection because no

rational basis exists for the exception contained in KRS 159.051(2). That exception reads as follows:

Revocation under this subsection shall not be permitted unless the local school district shall operate an alternative education program approved by the Department of Education *designed to meet the learning needs of students who are unable to succeed in the regular program.*

(Emphasis added.)

This emphasized language obviously refers to the special education programs described in KRS 157.200 to KRS 157.280. KRS 157.230 requires the establishment of such programs:

School boards of any school district subject to the provisions of KRS 157.200 to 157.280, shall establish and maintain special education programs for exceptional children who are residents of their school district, or contract for programs as may be authorized by KRS 157.280.

KRS 157.280(1) permits a school district with an insufficient number of children of school age with special needs to justify a special education program to contract with another district or approved private organization to provide the required special education classes. Finally, KRS 157.224(2) provides:

All county and independent boards of education shall operate special education programs pursuant to an annual application which has been approved by the Kentucky Department of Education pursuant to standards set out in administrative regulations promulgated by the Kentucky Board of Education. If any county or independent board of education fails to operate and implement special education programs in accordance with the standards, the application of the county or independent board of education for funding pursuant to KRS 157.360 may be considered insuffi-

cient and the add-on funds generated under that statute may be withheld by the Kentucky Board of Education until the program is in compliance with all substantive requirements designed to ensure that students with disabilities receive an appropriate education under the Federal Individuals with Disabilities Education Act, as amended . . . . .

Thus, the statutory scheme requires *every* county and independent school district to provide "an alternative education program approved by the Department of Education designed to meet the learning needs of students who are unable to succeed in the regular program." KRS 159.051(2). If every county and independent school district complied with this statutory mandate, there would be no need for the exception in KRS 159.051(2). However, both KRS 157.224(2) and KRS 159.051(2) recognize that some school districts are in noncompliance. KRS 157.224(2) authorizes monetary penalties for noncompliance, and KRS 159.051(2) protects students in those districts from being additionally penalized because they happen to live in a noncomplying district.

Absent the exception contained in KRS 159.051(2), learning-disabled students in noncomplying districts could argue that the statute discriminates against them because their districts have not provided alternative education programs in which they could participate and thereby avoid revocation of their motor vehicle operator's licenses because of academic deficiencies. The majority opinion turns that argument on its head and holds that learning-disabled students in complying districts are discriminated against *because* their districts have provided alternative education programs in which they can participate and thereby avoid revocation of their motor vehicle operator's licenses because of academic deficiencies. In fact, the statutory scheme only penalizes those students in complying districts who refuse to participate in available alternative education programs designed to cure their academic deficiencies. The fact that some districts have not complied with the requirement to provide such programs does not amount to unlawful discrimination against students in complying districts.

The rational basis for KRS 159.051 is the General Assembly's desire to encourage high school students under the age of eighteen to stay in school. The rational basis for the exception in KRS 159.051(2) is the General Assembly's desire not to further penalize students in noncomplying school districts. Since there is a rational basis for both the statute and the exception, there is no violation of either the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution or section 3 of the Constitution of Kentucky. *Steven Lee Enter. v. Varney,* Ky., 36 S.W.3d 391, 396 (2000).

Accordingly, I dissent.

LAMBERT, C.J., and WINTERSHEIMER, J., join this dissenting opinion.